S. Tomiyo Stoner, Esq.
tstoner@undauntedlaw.com
SBN 289246
UNDAUNTED LAW FIRM, P.C.
650 California Street 7th Floor
San Francisco, CA 94108
Tel. (844) 232-4332

UNITED STATES DISTRICT COURT

THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA ARTHURS, AN INDIVIDUAL, AND WESTON ARTHURS, AN INDIVIDUAL<br><br>Plaintiffs,<br><br>v.<br><br><br>ADVENTIST HEALTH, TENET HEALTHCARE CORPORATION; DOES 1-10;<br><br><br><br>Defendants. | Case No.<br><br>COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES FOR VIOLATIONS OF:<br><br>1. AMERICANS WITH DISABILITIES ACT (TITLE III)<br>2. SECTION 504 OF THE REHABILITATION ACT<br>3. SECTION 1557 OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT<br>4. CALIFORNIA UNRUH CIVIL RIGHTS ACT<br><br>DEMAND FOR JURY TRIAL |

**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**
1

## I. INTRODUCTION

1. Plaintiffs Weston Arthurs and Maria Arthurs are married, own a small business, and have a young family. This case concerns the harrowing experience they had during the birth of their son at Sierra Vista Regional Medical Center.

2. During that visit Sierra Vista Regional Medical Center, which at the time was owned and operated by Defendant Tenet Healthcare, discriminated against Plaintiffs by denying them access to information regarding the medical treatment. The lack of effective communication violated the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("Section 504"), Section 1557 of the Affordable Care Act ("ACA"), the Unruh Civil Rights Act ("UCRA"), and the California Disabled Persons Act ("DPA") resulting in significant barriers to access medical services at Defendants' facilities. Sierra Vista Regional Medical Center has been acquired by Adventist Health, but operates in a similar manner.

3. Plaintiffs experienced difficulty, including extreme distress due to communications barriers, as it was exceedingly difficult, and sometimes even impossible, to communicate regarding the care that was received. The communications difficulties occurred despite ample, frequent, and advanced notice of systemic issues with the Video Remote Interpreting technology Defendants attempted to use, despite notice that it was ineffective.

4. Plaintiffs bring this action to compel Defendants to cease unlawful discriminatory practices and implement policies that will allow Plaintiffs meaningful access to medical care in their community. Plaintiffs seek declaratory, injunctive, and equitable relief, statutory damages, and attorneys' fees and costs to redress Defendants' unlawful discrimination on the basis of disability in violation of Title III of the ADA, 42 U.S.C. § 12101 et seq., Section 504 of the Rehabilitation Act, and Section 1557 of the ACA, The UCRA, CA Civil Code §51 et seq., and the DPA, CA Civil Code §54-54.3.

5. The ADA expressly contemplates injunctive relief aimed at modification of a policy or practice that Plaintiff seeks in this action. In relevant part, the ADA states:

**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**

6. Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods. 42 U.S.C. § 12188(a)(2).

7. Consistent with 42 U.S.C. § 12188(a)(2), Plaintiff seeks a permanent injunction requiring that:

    a. Defendants take all steps necessary to adopt policies and procedures that bring its facilities into full compliance with the requirements set forth in the ADA and its implementing regulations in order to ensure Defendants take all steps necessary to ensure that the effective communication barriers at Defendants' facilities do not reoccur; and

    b. Plaintiffs' representatives monitor Defendants' facilities to ensure the injunctive relief ordered. has been implemented and will remain in place.

    d. Defendants allow Plaintiffs to opt-out of VRI should future medical treatment be required.

8. Because Plaintiffs provided prior notice of the requirement to provide effective communication and provided notice the communication was ineffective, Plaintiffs believe they will again be denied interpreter services. Plaintiffs anticipate they may have additional children and will again require the services of the same facility.

## II. JURISDICTION, PARTIES, AND VENUE

9. Plaintiffs Maria Arthurs and Weston Arthurs are at all relevant time residents of San Luis Obispbo County, within the Central District of California.

10. Sierra Vista Regional Medical is owned and operated by Adventist Health and was formerly owned and operated by Tenet Health.

11. Tenet Healthcare Corporation is a Nevada Corporation with its principal place of business in located at 14201 Dallas Parkway, Dallas, TX 75254 and may be served through its registered agent C T Corporation System, 330 N Brand Blvd., Glendale, California.

**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**

12. Adventist Health is a California corporation organized and existing under the laws of California with their headquarters at 1 Adventist Health Way, Roseville, California 95661 and may be served through CSC - Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Sacramento, California.

13. Defendants' facilities are places of public accommodation as defined in 42 U.S.C.

14. §12181(7)(G) and Defendants are subject to the requirements of the ADA, the UCRA, the Rehabilitation Act, and the DPA. Plaintiff Maria Arthurs received treatment at Sierra Vista Medical Center, located at 1010 Murray Avenue, San Luis Obispo, California 93405.

15. Defendants Does 1 through 10 are individuals and/or entities who at all relevant times were employees, officers, agents, contractors, and or entities of the Defendants, who bear some responsibility for the actions alleged in this Complaint. Their identities and the extent of their involvement are not yet fully known such that Plaintiffs will amend this Complaint upon learning their identities and actions.

16. Upon information and belief, at all relevant times, each and every Defendant acted in concert with each other and was the agent, principal, subsidiary, representative, officer, employee, employer, manager, director, partner, and coconspirator in proximately causing the injuries and damages alleged herein.

17. Each and every Defendant is legally responsible to Plaintiffs for each co-Defendants' wrongful acts and omissions as though they had each committed each act themselves, and at all times authorized, directed, and ratified the acts and/or omissions of each remaining Defendant.

## II. JURISDICTION AND VENUE

18. This Court has supplemental jurisdiction over state-law claims pursuant to 28 U.S.C. § 1367.

19. Venue is proper because a substantial part of the events or omissions giving rise to this lawsuit occurred within this District.

## III. FACTS

COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES
4

20. Plaintiffs are both Deaf and use auxiliary aids and services to communicate. Both are proficient in American Sign Language and most comfortable utilizing the services of an in-person ASL interpreter.

21. Plaintiff Maria Arthurs has a cochlear implant, which she is able to utilize to communicate some information in spoken English. However, for her, the implant has been far less effective than the representations often made. In noisy environments, she is unable to understand spoken language effectively, and in any environment, she finds using the cochlear implant requires a great deal of concentration and focus to achieving a meaningful level of communication. She is unable to withstand use of the cochlear implant for long periods of time and, as many similarly-situated people do, she does not utilize the implant at all times. She uses the implant when able, but was unable to utilize the implant at the time of the events in question.

22. Plaintiffs are, accordingly, substantially limited in the major life activities of hearing and speaking as those terms are defined by applicable law.

23. Plaintiff Maria Arthurs had given birth previously at Sierra Vista Medical Center, due to its proximity and ability to provide superior medical care to babies. When she learned she was pregnant, she planned to give birth at Sierra Vista Regional Medical Center again. During her prior birth experience, communication was a major challenge. Accordingly, she took steps to ensure communication would be effective during her upcoming birth.

24. Prior to the birth, Plaintiffs communicated with representatives of Defendants regarding their needs and particular challenges they had experienced in the past due to a lack of effective communication. Plaintiffs provided information about how an interpreter could be scheduled.

25. On or about September 13, 2023, Plaintiffs arrived at Sierra Vista Medical Center with regular painful contractions at 40 weeks and 6 days. Early that evening, Plaintiff Maria Arthurs was admitted to the hospital.

26. Upon arriving at the hospital, she was informed that she would not have a live interpreter. She attempted to use the VRI. The interpretation was unclear, even in the context of a relatively routine communication. Among other things, the records incorrectly reflect that she had no history of depression, despite her significant report that she had experienced post-partum depression following a prior pregnancy.

27. Maria was given a Cook balloon to speed labor and an epidural. She received little information regarding these interventions due to the lack of communication. Weston was present to support her, but he was also not receiving clear information.

28. Having been denied effective communication by the hospital, Plaintiffs brought in their own ASL interpreter at their own expense.

29. Following the induction, labor progressed slowly at first. Plaintiffs and the interpreter rested while they waited for labor to progress,

30. At some point, it was determined that there was fetal intolerance of labor. During the key moments surrounding the decision of whether to have a c-section, little information was communicated to Plaintiffs. However, Plaintiffs were able to see the monitors and were gravely concerned. Maria was taken to c-section without fully understanding the reasons for the procedure, her alternatives, or the anticipated prognosis. She does not claim c-section was an inappropriate medical decision, but it was terrifying to see that her baby was in distress and not to fully understand what was being done or why. Through context, as she was being taken away, she figured out that she would be having a c-section, but she did not know anything about the procedure other than the basic information she had previously obtained through non-medical sources. She was terrified her baby's life was in danger and had no idea what to expect during the procedure.

**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**

31. Weston was sleeping at the time it was decided she would have a c-section. He awoke to see the baby's monitor flat and signs of chaos in the room. He had no idea what was occurring. He could not be a source of comfort for Maria as he had planned to be. He was helpless and lacked information – unaware of whether his baby and his wife were even alive or dead.

32. Although she is hesitant to return to give birth again in the future, her history of C-Section elevates the risk of birth such that she is not a candidate for safely giving birth in less medicalized settings moving forward.

33. As a result of Defendants' discrimination, Plaintiffs suffered extreme mental suffering including anxiety, humiliation, and mental distress, based on the inability to communicate and fear that their child had died or may die.

34. Plaintiffs provided and paid their own professional ASL interpreter, and suffered economic loss.

## FIRST CAUSE OF ACTION

### (Violation of Title III of the Americans with Disabilities Act)

35. Plaintiffs restate each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

36. At all times relevant to this action, Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181, et seq. was in full force and effect and applied to Defendants' conduct.

37. At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, were in full force and effect and applied to the Defendants' conduct.

38. At all times relevant to this action, Plaintiff has been substantially limited in the major life activity of hearing and speaking. Accordingly, she is considered an individual with a disability as defined under the ADA, 42 U.S.C. § 12102(2).

39. Defendants own, lease, and/or operates a comprehensive system for healthcare services that are places of public accommodation as defined under Title III of the ADA, 42 U.S.C.

40. Title III of the ADA prohibits discrimination on the basis of disability "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodations." 42 U.S.C. § 12182(a).

41. Pursuant to Title III of the ADA and its implementing regulations, a public accommodation cannot deny participation or offer unequal or separate benefits to individuals with disabilities. 42 U.S.C. § 12182(b)(1)(A); 28 C.F.R. §§ 36.202.

42. Pursuant to Title III of the ADA and its implementing regulations it "shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E).

43. Qualified interpreters on-site or through VRI services are auxiliary aids and services under the Title II regulations. 28 C.F.R. § 35.104. VRI is required to be a real-time, full-motion video and audio over a dedicated high-speed video connection that is on a display large enough to display the interpreter's face, arms, hands, and fingers, and the participating individual's face, arms, hands, and fingers, regardless of his or her body position. 28 C.F.R. § 35.160(d). The staff is required to be adequately trained in this technology. Id. Section 36.303 likewise defines "auxiliary aids and services" to include qualified interpreters, VRI services, or other effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing.

**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**
8

44. Defendants' facilities, as public accommodations, are required to furnish these appropriate aids and auxiliary services to ensure effective communication with individuals with disabilities, like Plaintiff.

45. Defendants discriminated against Plaintiffs on the basis of their disabilities by denying them access to full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations of its places of public accommodation, and equal opportunity to participate in and benefit from Defendants' healthcare services, in violation of the ADA.

46. As set forth above, absent injunctive relief, there is a clear risk that Defendants' actions will recur with Plaintiffs and/or other deaf or hard of hearing persons seeking Defendants' healthcare services.

47. Plaintiffs are therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1) and/or common law.

## SECOND CAUSE OF ACTION

### (Violation of Section 504 of the Rehabilitation Act)

48. Plaintiffs incorporate the allegations in the preceding paragraphs, as if allegedherein.

49. Plaintiffs are each individuals with a disability protected by Section 504 of the Rehabilitation Act. See 29 U.S.C. § 794(a); 45 C.F.R. § 84.3(j).

50. Defendants are recipients of federal financial assistance from the Department of Health and Human Services and are subject to Section 504 of the Rehabilitation Act and its implementing regulations. See 29 U.S.C. § 794; 45 C.F.R. § 84.3(h).

51. Section 504 of the Rehabilitation Act provides that no qualified individual with a disability shall be subjected to disability-based discrimination under any program or activity receiving federal financial assistance. 29 U.S.C. § 794(a).

52. Discrimination includes failing to "[a]fford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," or providing qualified handicapped persons with "an aid, benefit, or service that is not as effective as that provided to others." 45 C.F.R. § 84.4(b)(1)(ii)-(iii); see 45 C.F.R. §§ 84.52(a)(2)-(3).

53. Section 504 requires health programs or activities that receive federal financial assistance to provide auxiliary aids and services to individuals who are hearing-disabled and use auxiliary aids. 45 C.F.R. §§ 84.52(b), (d). It further requires that the health programs provide appropriate auxiliary aids to qualified handicapped persons with impaired sensory, manual, or speaking skills where a refusal to make such provision would discriminatorily impair or exclude the participation of such persons in a program or activity receiving Federal financial assistance." 28 C.F.R. § 42.503(f). "Such auxiliary aids may include brailled and taped material, qualified interpreters, readers, and telephonic devices. (emphasis added)" *Id.*

54. Section 504 was implemented to "[e]nsure that communications with [Defendants'] applicants, employees and beneficiaries are effectively conveyed to those having impaired vision and hearing." 28 C.F.R. § 42.503(e).

55. A recipient may not directly or through contractual, licensing, or other arrangements, discriminate on the basis of disability. 45 C.F.R. § 84.4(b)(1).

56. Defendants' provision of healthcare services constitutes a program or activity receiving federal financial assistance and, as a recipient, it is required to ensure that both Defendants and their contractors comply with Section 504 of the Rehabilitation Act.

57. Defendants have failed and are failing to meet their obligation to provide Deaf individuals an equal opportunity to use and benefit from its health care programs and

### THIRD CAUSE OF ACTION

### VIOLATION OF SECTION 1557 OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT

### [42 U.S.C. § 18116]

---

**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**
10

58. Plaintiffs incorporate each allegation of the complaint as if set forth herein.

59. Since March 2010, there was in full force and effect a statute known as the Patient Protection and Affordable Care Act (the "Affordable Care Act"), 42 U.S.C. § 18001, et seq., Pub.L. 111-148. Section 1557 of the Affordable Care Act prohibits discrimination on the basis of race, color, national origin, sex, age, or disability in certain health programs and activities. 42 U.S.C. § 18116. Section 1557's implementing regulations, 45 C.F.R. §§ 92.1 – 92.203, effective as of July 18, 2016, and affirmed as of June 12, 2020, apply to health programs or activities administered by recipients of Federal financial assistance from the Department of Health and Human Services (the "Department").

60. Defendants participate in one or more Medicare and Medicaid healthcare plans with third-party payers and is a participating provider under Medicare and Medicaid. As a result, Defendants are covered entities under Section 1557.

61. Section 1557 of the Patient Protection and Affordable Care Act prohibits discrimination on the basis of disability in any health program or activity, any part of which receives federal financial assistance, including credits, subsidies, or health insurance contracts. 42 U.S.C. § 18116; 29 U.S.C. § 794. The nondiscrimination standards under Section 1557 are at least as stringent as the standards under Section 504 of the Rehabilitation Act. 45 C.F.R. § 92.3.

62. The implementing regulations of Section 1557 prohibit discrimination of an individual on the basis of disability, inter alia, and prohibit an individual from being excluded from participation in, denied the benefits of, or otherwise be subjected to discrimination under any health program or activity. See 45 C.F.R. §§ 92.2(a); 92.103; and 92.105.

63. Where the regulatory provisions use the term "public entity," the term "covered entity" shall apply in its place. As applied to Section 1557 covered entities, the Title II regulations require them to "make reasonable modifications to its policies, practices, or procedures when such modifications are necessary to avoid discrimination on the basis of disability . . . For the purposes of this section, the term "reasonable modifications" shall be interpreted in a manner consistent with the term as set forth in the regulation promulgated under Title II of the Americans with Disabilities Act, at 28 CFR 35.130(b)(7)." See 45 C.F.R. § 92.105.

64. Discrimination includes failure by a covered entity to take appropriate steps to ensure communications with participants with disabilities are as effective as communications with participants without disabilities, including the failure to furnish appropriate auxiliary aids and services when necessary to afford an equal opportunity to participate in the services and activities of the entity. 45 C.F.R. § 92.202; 28 C.F.R. § 35.160.

65. Under 28 CFR § 35.160(b)(2), the type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place. In determining what types of auxiliary aids and services are necessary, a public entity shall give "primary consideration" to the requests of individuals with disabilities. *Id.*

66. The Appendix to the ADA regulations also makes clear the public entity has a duty to ensure effective communications and establishes a required deference that must normally be given to a disabled person's personal choice of aid and service: "the public entity shall honor the choice [of the individual with a disability] unless it can demonstrate that another effective means of communication exists or that use of the means chosen would not be required under § 35.164. Deference to the request of the individual with a disability is desirable because of the range of disabilities, the variety of auxiliary aids and services, and different circumstances requiring effective communication." Id. pt. 35, App. A (alteration in original) (quoting 28 C.F.R. pt. 35, App. A (2009)).

COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES
12

67. As codified at 45 C.F.R., § 92.202, the "effective communication" provision of the Affordable Care Act states:

> Effective communication for individuals with disabilities.
>
> (a) A covered entity shall take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others in health programs and activities, in accordance with the standards found at 28 CFR § 35.160 through § 35.164.

In turn, 28 C.F.R. § 35.164, "Duties", states, in pertinent part: "[t]he decision that compliance would result in such alteration or burdens must be made by the head of the public entity or his or her designee after considering all resources available for use in the funding and operation of the service, program, or activity and must be accompanied by a written statement of the reasons for reaching that conclusion. In those circumstances where personnel of the public entity believe that the proposed action would fundamentally alter the service, program, or activity or would result in undue financial and administrative burdens, a public entity has the burden of proving that compliance with this subpart would result in such alteration or burdens.

68. Defendants' conduct constituted violations of Section 1557.

69. Defendants' conduct constitutes ongoing and continued violations of Section 1557. Unless restrained from doing so, Defendants will continue to violate Section 1557. This conduct, unless enjoined, will inflict injuries on Plaintiffs.

70. Pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794a., Plaintiffs are entitled to injunctive relief, as well as reasonable attorneys' fees and costs, and to compensatory damages as provided by statute.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF THE CALIFORNIA UNRUH CIVIL RIGHTS ACT [CA CIVIL CODE SECTION 51 ET SEQ.]**

---

**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**

71. Plaintiffs restate each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

72. The UCRA, California Civil Code section 51 provides that: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b).

73. Defendants are business establishments within the meaning of the UCRA. Defendants are the owners and operators of business establishments within the meaning of the UCRA.

74. Defendants violated the UCRA by its acts and omissions, as set forth herein. Specifically, Defendants' service are business establishments within the meaning of Civil Code § 51, et seq. Defendants' services are an accommodation, advantage, facility, privilege, and service provided by Defendants, which are inaccessible to deaf patrons. This inaccessibility denies deaf consumers full and equal access to the accommodations, advantages, facilities, privileges, and services that Defendants make available to the non-disabled public, in violation of the UCRA, California Civil Code § 51, et seq. These violations are ongoing.

75. Defendants' actions constitute intentional discrimination on the basis of a disability in violation of California Civil Code § 51, et seq. Defendants are required to provide auxiliary aids and services that provide effective communication.

76. Defendants are additionally violating California Civil Code § 51, in that the conduct alleged herein constitutes a violation of various provisions of the ADA, 42 U.S.C. §§ 12101, et seq., as set forth above. California Civil Code § 51(f) provides that a violation of the right of any individual under the ADA shall also constitute a violation of the UCRA.

77. As a result of Defendants' wrongful conduct, Plaintiffs are entitled to statutory damages under California Civil Code § 54.3 for each offense and attorney's fees.

**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**

# PRAYER

WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief: Accepting jurisdiction of this case and declaring the Defendants' policies, procedures, and services are discriminatory and violate the ADA, the ACA, the Rehabilitation Act, the UCRA, and the DPA;

1. Injunctive relief as set forth below:
    a) An injunction forbidding Defendants from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals, or their companions, meaningful access to and full and equal enjoyment of Defendants' facilities, services or programs;
    b) An injunction requiring Defendants to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against Plaintiffs or other deaf or hard of hearing individuals by failing to provide effective communication;
    c) An injunction requiring Defendants to develop, implement, promulgate, and comply with a policy to ensure, in the event the Defendants utilize a fully functional Video Remote Interpreting System ("VRI"), that such system has a high-speed Internet connection; a video screen with appropriate size, position, capture angle, focus, and proximity to the deaf individual; and appropriate audio quality. When possible, the equipment should be portable and made available to the patient where the patient is located, preferably in a private room to minimize distractions and maintain confidentiality;
    d) to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard of hearing individuals are able to communicate through the most appropriate method under the circumstances, recognizing that the VRI is not appropriate in all medical situations;

    e) to create and maintain a list of sign language interpreters and ensure availability of such interpreters at any time of day or night;

    f) Requiring Defendants to issue to Plaintiffs and their counsel an annual report within twelve (12) months of the date of an injunction demonstrating compliance with the terms of this Court's injunction and continuing to be provided on an annual basis for a period of five (5) years. The reports should include updated employee policies, procedures, and training records to establish that Defendants have complied with this Court's injunction;

    g) Allowing Plaintiffs, their counsel, and their experts to conduct one site inspection per year for a period of five (5) years of Defendants' medical facilities at issue upon forty-eight (48) hours written notice by Plaintiffs to the facility.

2. Awarding statutory damages, for actual damages suffered by Plaintiffs, pursuant to Section 52(a) of the UCRA and 54.3(a) of the DPA.

3. Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205, 28 CFR § 36.505, the UCRA, and the DPA, including costs of monitoring Defendants' compliance with the Judgment;

4. Awarding statutory interest at the maximum available amount.

5. Awarding such other relief as the Court deems necessary, just, and proper.

Dated: July 1, 2025

Respectfully submitted,

S. Tomiyo Stoner
Undaunted Law Firm, P.C.
650 California Street
7th Floor
San Francisco, CA 94108
Tel.: 844-232-4332
tstoner@undauntedlaw.com

**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**
16

1
2
3
**Demand for Jury Trial**

4
Plaintiffs demand a trial by jury with respect to all issues triable of right by jury.

5
6
*/s/*
S. Tomiyo Stoner
7
Undaunted Law Firm, P.C.
650 California Street
8
7th Floor
San Francisco, CA 94108
9
Tel.: 844-232-4332
tstoner@undauntedlaw.com
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**
17